COMERICA BANK-DETROIT v DEPARTMENT OF TREASURY

Docket No. 128955. Submitted March 10, 1992, at Lansing. Decided May 4, 1992, at 9:20 A.M. Leave to appeal sought.

Comerica Bank-Detroit brought an action in the Ingham Circuit Court against the Department of Treasury and the Revenue Commissioner, seeking a refund of income taxes paid in 1971, 1974, and 1975. It alleged that provisions of the Income Tax Act on which the taxes had been based were violative of federal constitutional and statutory law as interpreted by *Memphis Bank & Trust Co v Garner*, 459 US 392 (1983), because those provisions treated interest paid on federal obligations as part of a financial institution's tax base while excluding from the tax base interest paid on Michigan obligations. The defendants moved for summary disposition on the grounds that *Memphis Bank* should be given prospective effect only, that the applicable period of limitation had run before the action had been commenced, and that the circuit court lacked jurisdiction to hear the matter. The court, Peter D. Houk, J., found that it had jurisdiction to hear the claim, but granted summary disposition for the defendants on the ground that *Memphis Bank* should not be given retroactive application. The plaintiff appealed, and the defendants cross appealed.

The Court of Appeals *held:*

1. The principles of equality of treatment and stare decisis compel retroactive application of *Memphis Bank*. On remand, the trial court should consider whether the plaintiff's request for a refund is the only appropriate remedy that will give effect to *Memphis Bank.*

2. The tolling provision of the Income Tax Act in effect at all times pertinent to this action suspended the running of the applicable limitation period during the pendency of any proceedings in the Tax Tribunal relating to the same tax liability. Because proceedings involving the 1974 and 1975 tax returns were pending in the Tax Tribunal until after this action had been commenced, the trial court correctly held that the filing of this action was timely.

3. During the years in which the disputed taxes were incurred, the Income Tax Act provided that a taxpayer could bring an action for a refund in the Ingham Circuit Court. 1975

PA 233, which repealed the financial institution provisions of the Income Tax Act that are at issue here, clearly provided that the collection and enforcement provisions would continue with respect to any tax due under the repealed provisions. The Legislature clearly intended that circuit court actions for refunds involving disputes of taxes paid under the repealed provisions should be continued. There is nothing in the provisions of the Department of Revenue act, 1980 PA 162, that evidences an intent to the contrary. Accordingly, the trial court correctly held that it had jurisdiction.

Affirmed in part, reversed in part, and remanded.

*Miller, Canfield, Paddock & Stone* (by *Samuel J McKim, III, Robert F. Rhoades,* and *Joanne B. Faycurry*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Russell E. Prins* and *Terry P. Gomoll,* Assistant Attorneys General, for the defendants.

Before: SHEPHERD, P.J., and SAWYER and CONNOR, JJ.

CONNOR, J. Plaintiff appeals as of right from Ingham Circuit Court Judge Peter D. Houk's order of April 23, 1990, granting summary disposition for defendants. Defendants have filed a cross appeal from that same order. We reverse the trial court's decision and remand to the trial court for additional proceedings.

I

The facts in this matter are generally uncontested. This action was filed by plaintiff on October 23, 1983, to seek a refund of taxes paid in 1971, 1974, and 1975. Plaintiff filed amended returns for 1974 and 1975 on July 25, 1983. In addition, plaintiff amended its tax return for 1971 because the amendment for the 1974 return resulted in a

net operating loss carry-back to the year 1971. The revenue commissioner denied the refund request on September 30, 1983, on the ground that the period of limitation had lapsed.

It was plaintiff's claim that the taxes it was required to pay in 1974 and 1975 were unconstitutional and it was entitled to refunds. Plaintiff relied upon the United States Supreme Court's holding in *Memphis Bank & Trust Co v Garner,* 459 US 392; 103 S Ct 692; 74 L Ed 2d 562 (1983), declaring that state laws that include interest on federal obligations in the tax base for determining the income tax on financial institutions while at the same time excluding from taxation interest earned on state obligations violate the Supremacy Clause and federal law. Plaintiff did not pay its original taxes under protest and never raised the issue of unconstitutional taxation by defendants until after *Memphis Bank* was decided.

Well before the decision in *Memphis Bank* was released, the Michigan Legislature, by 1975 PA 233, immediately effective August 27, 1975, repealed the sections of the Income Tax Act of 1967 that plaintiff contends were ruled unconstitutional by *Memphis Bank.* At the time plaintiff's tax returns were filed in 1974 and 1975, MCL 206.71; MSA 7.557(171) provided as follows:

> (1) There is levied and imposed upon every financial institution a tax measured by 9.7% of taxable income as defined in section 34 subject to the applicable source and attribution rules contained in this act.
>
> (2) The tax imposed on financial institutions is in lieu of all other state and local taxes, however measured, upon financial institutions, except taxes imposed upon real property, sales, use and similar excise taxes, examination and audit fees and those taxes levied under the provisions of Act No. 156 of

the Public Acts of 1964, as amended, being sections 489.501 to 489.920 of the Compiled Laws of 1948.

(3) If the application of this tax to national banking associations is held to be invalid by final judicial action, then there shall be no tax levied or imposed by this section 71 on state banks, including industrial banks and trust companies.

The controversy in this case specifically pertains to the definition used for "taxable income" for financial institutions in MCL 206.34; MSA 7.557(134), also repealed by 1975 PA 233, and referred to in MCL 206.71; MSA 7.557(171). MCL 206.34; MSA 7.557(134) provided, in pertinent part, for the years at issue in this case:

(1) "Taxable income" in the case of a financial institution means federal taxable income subject to the following adjustments:

(a) Add gross interest income and dividends derived from obligations or securities of states other than Michigan, in the same amount which has been excluded from federal taxable income, less related expenses not deducted in computing federal taxable income because of section 265 of the internal revenue code.

In the trial court, the parties filed cross motions for summary disposition on multiple grounds, including that the period of limitation had expired, that subject-matter jurisdiction should be with the Tax Tribunal and the Court of Claims rather than the Ingham Circuit Court, and, finally, that the decision in *Memphis Bank* should be given prospective application only.

The trial court agreed with defendants that the decision in *Memphis Bank* should be applied prospectively only and held that plaintiff was not entitled to a refund at that late date.

II

The first issue raised by plaintiff on appeal is whether the trial court correctly determined that *Memphis Bank* should be applied prospectively only.

In *Memphis Bank,* the United States Supreme Court reviewed a Tennessee statute that imposed on banks doing business within Tennessee a tax based on net earnings and that defined net earnings to include income from obligations of the United States and its instrumentalities but excluded income earned on obligations of Tennessee and its political subdivisions. The Tennessee statute based the calculation on net earnings on the federal taxable income with specific adjustments, 26 USC 103(a). 459 US 394, n 3. Under 26 USC 103(a), federal taxable income included interest earned on the obligations of the United States and its instrumentalities, but did not include interest on state or municipal obligations. 459 US 394, n 3. The adjustment to federal taxable income that Tennessee utilized in determining net earnings included interest income from bonds and other obligations of other states or their political subdivisions, but no similar adjustment was made to include interest on obligations of the State of Tennessee or its political subdivisions. *Id.* The effect of this tax law was to require Tennessee banks to pay state taxes on earnings from federal obligations but not on earnings from Tennessee obligations.

The appellant bank contended that the bank tax violated 31 USC 742 (now 31 USC 3124) and was unconstitutional under the Supremacy Clause. *Memphis Bank,* 459 US 394-395. The Supreme Court agreed with the appellant on both points.

In order to decide the case, the Supreme Court

turned to previous decisions, some going back as far as 1819, concerning the constitutional immunity granted to federal government property, including bonds and other securities. *Id.,* 396-397. 31 USC 742 was really only a restatement of the constitutional rule. 459 US 397.

Under the constitutional rule of tax immunity established in *McCulloch v Maryland,* 4 Wheat 316, 4 L Ed 579 (1819), "States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government." *United States v County of Fresno,* 429 US 452, 459; 97 S Ct 699; 50 L Ed 2d 683 (1977) (footnote omitted). Where, as here, the economic but not the legal incidence of the tax falls on the Federal Government, such a tax generally does not violate the constitutional immunity if it does not discriminate against holders of federal property or those with whom the Federal Government deals. See, *e.g., United States v County of Fresno, supra,* at 459-464; *United States v City of Detroit,* 355 US 466, 473; 78 S Ct 474; 2 L Ed 2d 424 (1958). . . .

A state tax that imposes a greater burden on holders of federal property than on holders of similar state property impermissibly discriminates against federal obligations. . . .

* * *

It is clear that under the principles established in our previous cases, the Tennessee bank tax cannot be characterized as nondiscriminatory under § 742. Tennessee discriminates in favor of securities issued by Tennessee and its political subdivisions against federal obligations. The State does so by including in the tax base income from federal obligations while excluding income from otherwise comparable state and local obligations. We conclude, therefore, that the Tennessee bank tax impermissibly discriminates against the Federal Government and those with whom it deals. [459 US 397-399.]

The parties in the present case apparently concede that the holding in *Memphis Bank* invalidates MCL 206.34; MSA 7.557(134) and MCL 206.71; MSA 7.557(171). The dispute centers on whether the holding in *Memphis Bank* should be retroactively applied to plaintiff's request for a refund.

Since the decision in *Memphis Bank* was released, a few state courts have addressed the question whether that decision should be prospectively or retroactively applied to the various state bank tax laws that violated the holding in *Memphis Bank.*

In *First Bank of Buffalo v Conrad,* 350 NW2d 580, 585-586 (ND, 1984), the North Dakota Supreme Court held that because the plaintiff had not paid its taxes under protest, it could not seek a refund for taxes paid pursuant to statutes that *Memphis Bank* subsequently had invalidated. The opinion did not specifically address whether *Memphis Bank* should be prospectively applied, although the holding certainly suggests that it would only be applied prospectively in North Dakota.

In contrast, the Oklahoma Supreme Court addressed the issue precisely in *First of McAlester Corp v Oklahoma Tax Comm,* 709 P2d 1026, 1029 (Okla, 1985). By applying the three-part test from *Chevron Oil Co v Huson,* 404 US 97; 92 S Ct 349; 30 L Ed 2d 296 (1971), the court determined that only prospective application was warranted. The court reasoned that even though *Memphis Bank* was not completely unforeseen on the basis of past decisions, the ruling was not anticipated by the Oklahoma Legislature or tax commission and the state would suffer dire financial consequences if the decision were to be applied retroactively. 709 P2d 1034, 1036.

The Minnesota Supreme Court in *Cambridge*

*State Bank v Roemer,* 457 NW2d 716, 722-723 (Minn, 1990), also utilized the *Chevron Oil* test in determining that the decision in *Memphis Bank* should be applied prospectively only. The court held that the decision in *Memphis Bank* was not foreseen and, therefore, should be treated as a new principle of law. The court found that the equities favored prospective application only, because the taxes collected had long since been spent and the granting of a refund would result in a windfall to the banks at issue.

More recently, however, the United States Supreme Court vacated that decision in *Cambridge State Bank,* sub nom *Norwest Bank Duluth, NA v James,* — US —; 111 S Ct 2881; 115 L Ed 2d 1047 (1991), and remanded the case to the lower court for reconsideration in light of *James B Beam Distilling Co v Georgia,* 501 US —; 111 S Ct 2439; 115 L Ed 2d 481 (1991).[1]

In *Beam,* although a majority of the justices were unable to agree on a single opinion, a consensus did emerge. At issue was whether a Georgia state tax on imported alcohol and distilled spirits at a rate double that for Georgia-produced products, previously held by the United States Supreme Court to be unconstitutional, should be applied retroactively or prospectively only. 115 L Ed 2d 486. The lower court in *Beam* applied the test from *Chevron Oil* and held that the previous Supreme Court decision should be applied prospectively only. 115 L Ed 2d 486-487. On appeal to the Supreme Court, that decision was reversed in favor of retroactive application.

---

[1] We note that defendants have argued that this Court should follow the Minnesota Supreme Court's decision in *Cambridge State Bank* after remand, *Cambridge State Bank v James,* 480 NW2d 647 (1992). We decline to follow that decision at the present time, because it addresses the remedy available under state law, which we believe the trial court must first address.

From our reading of *Beam,* the Supreme Court has severely limited the doctrine of prospective-only application of decisions and has reverted back to the original rule, which provided for retroactive application unless the law changes in some significant manner. The rationale underlying retroactive application is that all similarly situated parties should be treated equally. In most cases, the equities factor discussed in *Chevron Oil* should not be the controlling consideration, because precedent in substantive law should not shift on the basis of the individual equities of a particular case. 115 L Ed 2d 493. Equities should only enter into the decision of what remedy should be used. *Id.*

On the basis of the Supreme Court's decision in *Beam,* we believe the prior decisions from other jurisdictions that resulted in prospective application of *Memphis Bank* cannot be relied upon as precedent, because they were primarily concerned with equitable considerations rather than with focusing on the necessity to treat litigants equally under the law.

In addition, this Court has recently addressed the problem of retroactive application of United States Supreme Court decisions in *Fonger v Dep't of Treasury,* 193 Mich App 71; 483 NW2d 920 (1992). In that case, the panel was faced with determining whether *Davis v Michigan Dep't of Treasury,* 489 US 803; 109 S Ct 1500; 103 L Ed 2d 891 (1989), should be retroactively applied. *Davis* concerned whether federal pensions could be subject to state taxes when state pensions were not taxed likewise. This Court concluded that the *Davis* decision should be retroactively applied in light of *Beam* and noted that decisions from other states limiting *Davis* to prospective application were subsequently vacated and remanded by the United

States Supreme Court for reconsideration under *Beam. Fonger, supra.*

In the case at bar, we believe the Supreme Court's decision in *Memphis Bank* should be applied retroactively on the basis of the principles of equality and stare decisis as discussed in *Beam,* 115 L Ed 2d 491. We see no compelling reason to limit the decision in *Memphis Bank* to prospective application only where many of the principles underlying that decision were present before the case was decided, although the specific issue was not addressed until the *Memphis Bank* decision. Although pre-1959 Supreme Court decisions did not foreclose the belief that state taxes that were measured by net income that included federal obligations did not violate the Supremacy Clause, Congress responded to this discrepancy in 1959 by enacting 31 USC 742, thereby setting aside the pre-1959 approach to such tax laws. See *National Bank of Alaska v Alaska Dep't of Revenue,* 769 P2d 990, 993-994 (Alas, 1989). Because Michigan's tax on financial institutions was reenacted as part of the Income Tax Act of 1967, we believe the retroactive application of the decision in *Memphis Bank* is appropriate in this case. Equities should be considered only in determining what remedy should be provided.

Because the trial court never reached the issue of the remedy to which plaintiff was entitled, we remand this matter to the trial court for additional proceedings. Despite the preference expressed by the Legislature that any invalid portions of MCL 206.71; MSA 7.557(171) be taken care of by the application of subsection 3 of that section, we believe that applying subsection 3 may be inappropriate in this case, given the time that has passed. Therefore, the lower court should consider

whether plaintiff's request for a refund is the only appropriate remedy.

Plaintiff has alternatively argued on appeal that selective application of *Memphis Bank* amounts to a denial of equal protection under the law. Given our conclusion that *Memphis Bank* is to be applied retroactively, we need not reach this issue.

III

Despite our conclusion that *Beam* supports retroactive application of *Memphis Bank,* a procedural bar, such as a statute of limitation, can still prohibit retroactive application of a decision, *Beam, supra,* 115 L Ed 2d 492. Defendants have argued, both below and on appeal, that this claim is barred by the running of the period of limitation for such actions under state law. We disagree.

Defendants contend that the limitation period found at MCL 206.441; MSA 7.557(1441) bars plaintiff's request for a refund. That statute, in pertinent part, provided:[2]

> (2) A taxpayer who has paid a tax which he claims was not due under this act may, on or before the expiration date of 3 years from the date set for the filing of the annual or final return for the year or the date the tax was paid, whichever is later, and not after, petition the department in writing to refund the amount so paid. . . .

However, MCL 206.411; MSA 7.557(1411) also addresses the period of limitation for tax cases, particularly tolling provisions. The relevant portion of MCL 206.411; MSA 7.557(1411), during the period that plaintiff's action was pending, provided:

---

[2] Amended in 1980 to a four-year limitation period and eventually repealed in 1990.

(2) The running of the statute of limitations shall be suspended for the period pending final determination of litigation of or hearing on a taxpayer's federal income tax return or of the return required by this act, or if a notice is required under section 325, and for 1 year thereafter.[3]

It was established below that plaintiff's tax returns for 1974 and 1975 were involved in litigation before the Tax Tribunal until after this case was filed in the circuit court. The trial court ruled that the statute of limitations was tolled pursuant to the tolling provision of MCL 206.411(2); MSA 7.557(1411)(2) because the 1974 and 1975 returns, and the 1971 return because of its relation-back status, were still in litigation.

We believe that the trial court reached a correct result. Both the Michigan Supreme Court and this Court interpreted MCL 206.411; MSA 7.557(1411), before recent amendments, as tolling the statute of limitations without regard to what issues were pending before the Tax Tribunal and held that this tolling provision also applied to refund claims, although the period of limitation for refunds was not addressed in MCL 206.411; MSA 7.557(1411). *Clark-Gravely Corp v Dep't of Treasury,* 412 Mich 484, 488-489; 315 NW2d 517 (1982); *Manufacturers Bank of Detroit v Dep't of Treasury,* 167 Mich App 467, 472-473; 423 NW2d 228 (1988); *National Bank of Detroit v Dep't of Treasury,* 166 Mich App 218, 222-223; 420 NW2d 108 (1987). Although it appears the Legislature subsequently took steps to rectify this problem by enacting 1987 PA 254, which amended MCL 206.411; MSA 7.557(1411), and by enacting 1986 PA 58, which added MCL 205.27a(3);

---

[3] The language cited is from the statute as amended by 1980 PA 169; however, the 1980 changes in the statute were minor and do not affect our analysis.

MSA 7.657(27a)(3), those changes are not applicable in this case. Accordingly, the trial court correctly held that plaintiff's circuit court action for a refund was filed timely, because the statute of limitations with respect to an action challenging tax liability and returns for the years in question was tolled pursuant to the provisions of MCL 206.411(2); MSA 7.557(1411)(2) before its 1987 amendment.

IV

Defendants, in their cross appeal, have also challenged the circuit court's jurisdiction over this case. We initially note that plaintiff filed in the Court of Claims, the Ingham Circuit Court, and the Tax Tribunal. Defendants raised their jurisdictional challenge in the circuit court, which ruled that it had jurisdiction to decide this case and ordered that the matters in the Court of Claims and the Tax Tribunal be dismissed. We agree that there was subject-matter jurisdiction in the circuit court under the facts and law of this case.

We believe the lower court correctly referred to the legislative history of the financial institutions tax at issue to resolve the jurisdictional question in this case. Because plaintiff's request for a refund was based upon the tax as imposed under § 71 of the Income Tax Act of 1967, MCL 206.71; MSA 7.557(171), the analysis of this issue must start from the remedies provided taxpayers under that act. Section 421, MCL 206.421; MSA 7.557(1421), as enacted in 1967, provided that jurisdiction could be with the circuit court for Ingham County:

(3) Any taxpayer aggrieved by any determination of tax liability made by the department may

appeal to the state board of tax appeals under the provisions of Act No. 122 of the Public Acts of 1941, as amended, being sections 205.1 to 205.17 of the Compiled Laws of 1948, or after payment of the amount of tax, interest and penalties found to be due by the department, *he may bring an action in the circuit court of the county of Ingham to recover the amount paid.* The action shall be commenced within 6 months after payment of the tax or after the adverse determination by the department of the validity of the taxpayer's claim for refund, whichever occurs later, and shall be conducted in accordance with the statutes and rules of procedure concerning actions at law not inconsistent with the provisions of this act. [Emphasis added.]

The section creating the tax at issue, MCL 206.71; MSA 7.557(171), was repealed by 1975 PA 233. 1975 PA 233 involved not only both the amendment and addition of some sections of the Income Tax Act of 1967, but also the repeal of certain specific provisions. However, § 421 was neither amended nor repealed by 1975 PA 233.

1975 PA 233 provided that the following sections were repealed:

Section 2. (1) Sections 32, 34, 61, 71, 81, 125, 151, 211, 221, 258, 321, 335, 336 and 341 of Act No. 281 of the Public Acts of 1967, as amended, being sections 206.32, 206.34, 206.61, 206.71, 206.81, 206.125, 206.151, 206.211, 206.221, 206.258, 206.321, 206.335, 206.336 and 206.341 of the Compiled Laws of 1970, are repealed.

(2) A final return shall be filed and the tax shall be paid as determined under the provisions of sections 61 and 71 of Act No. 281 of the Public Acts of 1967, as amended, on or before April 15, 1976, as required by this section, by a corporation subject to the provisions of that act.

(3) A calendar year taxpayer shall file a final

return and pay the tax imposed by the act for the calendar year of 1975.

(4) A fiscal year taxpayer shall file a final return for a partial year from the end of his fiscal year ending in 1975 to December 31, 1975, and pay the tax imposed by that act.

(5) *The provisions of Act No. 281 of the Public Acts of 1967, as amended, shall continue in effect for the collection and enforcement of the payment of any tax, penalty, or interest due and payable by a corporation under the act for any period in which it was in effect prior to the repeal of sections 61 and 71 of Act No. 281 of the Public Acts of 1967, as amended,* and for the collection and enforcement of the payment of any tax, penalty, and interest in connection with the final return required by this section. [Emphasis added.]

Simultaneously with the amendment of the Income Tax Act of 1967 to eliminate the tax on financial institutions and other taxes, the Single Business Tax Act, 1975 PA 228, MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.*, was enacted to provide for a tax on financial activities beginning January 1, 1976. It is apparent that the Legislature, in making the changes in the tax laws, intended that financial institutions would continue to be subject to the provisions of § 71 of the Income Tax Act, MCL 206.71; MSA 7.557(171), with respect to the 1975 and previous tax years, with the Single Business Tax Act being applicable to the 1976 and later tax years. However, it is not clear if it was intended that remedial procedures likewise would be continued as they existed under the Income Tax Act of 1967 with respect to returns filed for the 1975 and previous tax years. To resolve this question, we must resort to rules of statutory construction.

The cardinal rule of statutory construction is to ascertain and give effect to the Legislature's in-

tent. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956); *Kizer v Livingston Co Bd of Comm'rs,* 38 Mich App 239, 246; 195 NW2d 884 (1972). We also note that special rules apply in interpreting tax laws. Generally, the scope of tax laws will not be extended by implication or forced construction. *Hart v Dep't of Revenue,* 333 Mich 248, 251; 52 NW2d 685 (1952). Where there is doubt over the interpretation, tax statutes are construed most strongly against the government. *Id.,* 252.

Defendants contend that this case should not have been filed in Ingham Circuit Court because § 421, which provided the Ingham Circuit Court with jurisdiction, was repealed and reenacted as MCL 205.22; MSA 7.657(22). The new statute, which was adopted by 1980 PA 162, provides for exclusive jurisdiction in the Court of Claims or alternatively in the Tax Tribunal. Defendants argue that any action for the refund of taxes paid in 1974 and 1975 under MCL 206.71; MSA 7.557(171) that was filed on or after September 16, 1980, the effective date of 1980 PA 162, is subject to the amended rule regarding jurisdiction. We believe that 1975 PA 233, which repealed the income tax on financial institutions, saved many of the procedural requirements for the processing of claims concerning taxes paid under that repealed provision.

Our analysis of this issue is guided by the reasoning of the Court in *Federal-Mogul Corp v Dep't of Treasury,* 161 Mich App 346; 411 NW2d 169 (1987). In *Federal-Mogul,* the Court addressed the problem whether franchise fees refunded under the franchise fee act could include an award of interest. The franchise fee act did not provide for any award of interest, but the recently added Department of Revenue act did provide for awards

of interest. *Id.,* 348-349. The problem resulted from the fact that the franchise fee act was repealed by 1975 PA 230, to be replaced by the Single Business Tax Act, but 1975 PA 230 provided that its repeal date extended as necessary for the enforcement and collection of franchise fees due before the repeal of that act. 161 Mich App 349-350. Because of the lack of clarity surrounding application of the Department of Revenue act to the franchise fee act, the panel concluded that 1975 PA 230 retained its full force and effect for the handling of refund claims under the franchise fee act. 161 Mich App 365-366.

In the case at bar, we are faced with much the same dilemma that confronted the panel in *Federal-Mogul.* From what we can glean from 1975 PA 233, the Legislature intended that the Income Tax Act of 1967 would continue to control any remaining issues over taxes imposed under the repealed financial institutions provisions, specifically the procedures for collection and enforcement. If procedural rules were preserved for enforcement and collection, it is only logical to conclude that refund procedures were also intended to be preserved.

We have not found in the language of 1980 PA 162 or the legislative analysis to House Bill 4718 any expression that the Legislature intended to apply the provisions of the Department of Revenue act, particularly MCL 205.22; MSA 7.657(22), to the resolution of disputes concerning the liability of financial institutions for income taxes imposed by MCL 206.71; MSA 7.557(171). While it is clear that 1980 PA 162 was intended to apply to state income taxes, we believe that had the Legislature intended the enactment of 1980 PA 162 to also repeal the portion of 1975 PA 233 that continued the dispute resolution procedures in effect at the

time of the repeal of the income tax on financial institutions, it would have expressly stated that intent. As the trial court noted, repeal by implication is not favored, *Flynn v City of Fraser,* 45 Mich App 346, 349-350; 206 NW2d 448 (1973), rather, there must be a clear showing of a legislative intent to repeal, *Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510, 524; 104 NW2d 182 (1960). Because both 1980 PA 162 and 1975 PA 233 can be read together without contradiction, this Court will not imply an intent to repeal. *People v Harrison,* 194 Mich 363, 370-371; 160 NW 623 (1916).[4]

On the basis of our review of the statutes at issue and the legislative history available, we believe that the Ingham Circuit Court correctly determined that it had jurisdiction in this case to entertain plaintiff's request for a refund.

Affirmed in part, reversed in part, and remanded for additional proceedings. Plaintiff's request for costs and damages under MCR 7.216(C)(1) (a) is denied. We do not retain jurisdiction.

---

[4] See also *Michigan Manufacturers Ass'n v Director, Workers' Disability Compensation Bureau,* 134 Mich App 723, 729; 352 NW2d 712 (1984) ("It has been held that an act which adopts by reference the whole or a portion of another statute or code incorporates the standard as it existed at the time of the adoption, and does not include subsequent modifications, amendments, or variations to the adopted statute or code. But, the adoption by reference of future legislation and rules are unconstitutional.").